Harold M. **ARNOLD**

v.

The **UNITED STATES.**

No. 233–61.

United States Court of Claims.

Dec. 13, 1968.

Thomas H. King, Washington, D. C., attorney of record, for plaintiff. Elmer B. Collins, Washington, D. C., of counsel.

Edgar H. Twine, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

DAVIS, Judge.*

For the period from July 1, 1943, through September 30, 1949, the plaintiff, an officer in the Air Force,[1] applied for and was granted an allowance for his dependent parents under the Pay Readjustment Act of 1942, ch. 413, 56 Stat. 359, as amended (37 U.S.C. § 101 (1946)), Section 4 of which required that, in order to qualify as dependents entitled to benefits, the applicant's parents must be "in fact dependent on such person for his or her chief support." In March 1956, several years after these payments, in the course of an inquiry by the General Accounting Office into their circumstances, the Deputy Director of Finance of the Air Force advised the Comptroller General that on the basis of his information "it is impossible to make a determination * * * that the dependency as claimed and paid did not exist", that the information and evidence which was available supported a claim of dependency, and that any "allegations of nondependency should be supported by specific facts". In April 1956, this information was conveyed to an inquiring United States Senator by the Director of the Air Force Legislative Laison Office, who concluded by stating that "[t]he final determination in Major Arnold's case now rests with the Comptroller General".

On January 25, 1957, the Comptroller General addressed a Certificate of Indebtedness to the plaintiff announcing that he was indebted to the United States in the sum of $5,266.10 because his parents were not dependent within the meaning of the Act, and simultaneously the Comptroller General apprised the Air Force of the indebtedness and recommended that collection action be taken against plaintiff's pay. There-

upon, on February 14, 1957, the Chief of the Settlements Division, Air Force Finance Center, requested the plaintiff's commanding officer at Scott Air Force Base to collect $5,266.10 from plaintiff by installment withholding from his pay, which was done until reimbursement was complete.

This suit was then filed to recover the $5,266.10. With the approval of the court, the trial commissioner placed upon plaintiff the burden of proving that his parents were in fact dependent under the statutory standard. After the trial, however, the commissioner concluded that, regardless of whether that burden was met, plaintiff was entitled to recover because this $5,266.10 had been improperly withheld from his pay and allowances. We agree with that ultimate conclusion though we do not see eye-to-eye with the commissioner on the reasons.

The first inquiry is whether, at the relevant time, the General Accounting Office had the authority to decide the substantive question of whether plaintiff was entitled to the dependency allowance he claimed for his parents.[2] Military dependency allowances were authorized by the Pay Readjustment Act of 1942, supra. The Servicemen's Dependents Allowance Act of 1942, ch. 443, § 112, 56 Stat. 381, 384 (37 U.S.C. § 212 (1946)), authorized the Secretary of the service to determine all facts, including the fact of dependency, as to *enlisted* personnel only, and his determination was final and conclusive and not subject to review by courts or accounting officers. Where an application for such allowance was made by *commissioned* personnel no specific provisions for determinations of fact were promulgated until the Dependents Assistance Act of 1950, ch. 922, §§ 10, 11,

---

\* We are indebted to Trial Commissioner C. Murray Bernhardt from whose opinion we have borrowed much of the statement of the facts and some other things.

1. Actually, Air Corps, Army of the United States, through June 30, 1949, and United States Air Force thereafter. He is now retired as a lieutenant colonel.

2. This is a pertinent issue because, as we have indicated, in 1956–1957 the GAO and the Air Force differed in their views on the parents' status.

64 Stat. 796–797 (50 App. U.S.C. §§ 2210, 2211 (1964)) (amending the Career Compensation Act of 1949, ch. 681, 63 Stat. 831). In that legislation, the power to determine all facts, including those of dependency, was given to the Secretary of the department concerned as to both enlisted and commissioned personnel, and this authority was final and not reviewable by the courts or accounting officers (except for cases involving fraud or gross negligence), although subject to reconsideration and modification by the Secretary on the basis of new evidence or other good cause, just as in the case of the 1942 Act. Thus, there seemed to be a gap from 1942 to 1950 as to dependency determinations concerning commissioned personnel. In an interlocutory order at an earlier stage of this litigation, the trial commissioner ruled that this vacuum was filled by the Comptroller General's power pursuant to his general authority under 31 U.S.C. §§ 71, 72, and 74 (1964) to examine, settle, and adjust claims by and against the Federal Government, and accounts and salaries of the Army, Air Force, and the Department of Defense. This interlocutory ruling (among others) was summarily affirmed by the court after neither party objected to it. We have no reason to depart from this law of the case, especially since it still seems correct. The General Accounting Office could properly make a determination.

The trial commissioner thought, however, that the power of the General Accounting Office was cut off by 31 U.S.C. § 82i (1964) which provides that after May 19, 1950, that Office was required to settle all accounts of disbursing and certifying officers within three years from the date of receipt of the account for auditing.[3] The commissioner said: "Therefore, by virtue of 31 U.S.C. § 82i, the General Accounting Office lost its right to issue plaintiff a valid Certificate of Indebtedness long prior to January 1957 for dependency payments erroneously made him in 1943–1949, for reconstruction justifies the assumption that the disbursing officer's account containing the last payment to plaintiff (through September 1949) would presumably have been submitted to the General Accounting Office for audit by November 1, 1949, so that if no exception was taken to the account by the General Accounting Office by November 1, 1952, or thereabouts, the right to do so was thereupon foreclosed." The commissioner read the first proviso to 31 U.S.C. § 82i as qualified by the concluding words requiring that a settlement be made within the three-year period.

■■ To us, on the other hand, the first proviso in 31 U.S.C. § 82i expressly makes sure that nothing in the section

---

3. 31 U.S.C. § 82i (1964) provides: "Effective three years after May 19, 1947, the monthly or quarterly accounts of any disbursing, accountable, or certifying officer of the Government shall be settled by the General Accounting Office within a period of not to exceed three years from the date of the receipt of the account by the General Accounting Office. A copy of the certificate of settlement in each case shall be sent to the officer involved and such settlement shall be final and conclusive on the General Accounting Office after the expiration of three years from the date of receipt of the account to the extent that no further charges or debts shall be raised in such account thereafter except as to moneys which have been or may be lost to the United States due to fraud or criminality on the part of said officer: *Provided*, That nothing in this section shall be construed to prohibit recovery from any payee of public moneys illegally or erroneously paid to such payee or to preclude the recovery from the disbursing, accountable, or certifying officer or his surety of any balance found due the Government under a settlement made within the period of three years as provided in this section: *Provided further*, That nothing in this section shall be construed to deprive any such officer of his right at any time to clear his accounts of questioned items in accordance with the provisions of existing law: *Provided further*, That the period of limitation above prescribed shall be regarded as suspended for the duration of any future war in which the United States may be engaged." The section was added by Act of May 19, 1947, ch. 78, 61 Stat. 101.

prevents recovery from a payee, in plaintiff's situation, who is determined to have illegally or erroneously received public moneys. As we read it, the concluding words of the proviso to which the commissioner refers—"under a settlement made within the period of three years as provided in this section"—govern only recoveries from disbursing, certifying, and accountable officers or their sureties. This clearly seems the normal grammatical construction of the language—which is hard to read otherwise —and it accords both with the prior legislative history and the post-Act understanding. There is nothing in the history to suggest that the bill which became § 82i was intended to establish any limitations period for suits against, or recoveries from, recipients of illegal or erroneous payments. On the contrary, the entire focus was on disbursing, accountable and certifying officers, and the need to protect that particular class from the harassment of delayed accountings. See S.Rep.No. 99, 80th Cong., 1st Sess. 2–3 (1947). To create in 1947, for the first time, a statute of limitations for actions by the Government against ordinary payees of public moneys would have been so noteworthy that it would surely have evoked comment and explication. The insertion of the proviso— showing affirmatively that no such effort was being made—explains the lack of any observation.

Similarly, neither the General Accounting Office, the Department of Justice, nor the courts appear to have thought in the past two decades that § 82i imposes any limitations period on suits or efforts to recover funds illegally paid out. A great many such actions were brought and withholding orders issued without any regard, so far as one can tell, for possible passage of limitations. Indeed, the executive and Congressional consideration of the new 1966 Act creating a six-year limitation period for most non-tax claims by the Government (Act of July 18, 1966, Pub.L.No.

89–505, 80 Stat. 304, 28 U.S.C. §§ 2415, 2416 (Supp. III, 1965–67)) makes no sense if Congress had already created a three year statute in 1947. Section 2415 (d) of the 1966 Act, in particular, erects a six-year ban for "every action for the recovery of money erroneously paid to or on behalf of any civilian employee of any agency of the United States or to or on behalf of any member or dependent of any member of the uniformed services of the United States, incident to the employment or services of such employee or member * * *." Congress plainly thought it was granting these people an important new protection, not decreasing or changing one already existing since 1947. See H.R Rep.No. 1534, 89th Cong., 2d Sess. 3–5 (1966).

We must conclude, therefore, that the General Accounting Office was well within its powers when it issued the Certificate of Indebtedness for $5,266.10 to plaintiff in 1957. The question then is whether the Air Force acted validly when it withheld that sum from his pay and allowances. The only statute the Air Force used to justify the withholding was 5 U.S.C. § 46d (Supp. II, 1952):

> When it is determined by the Secretary of the department concerned * * * or one of their designees, that * * * any member of the * * * Air Force * * * is indebted to the United States as the result of any erroneous payment made by the department * * * concerned to or on behalf of any such person, the amount of the indebtedness may be collected in monthly installments, or at officially established regular pay period intervals, by deduction in reasonable amounts from the current pay account of such person. The deductions may be made only from basic compensation, basic pay, special pay, and incentive pay, retired pay, retainer pay, or in the case of persons not entitled to basic pay, other authorized pay. * * * [4]

4. Currently 5 U.S.C. § 5514 (Supp. III, 1965–67) after amendment by Act of Sept. 6, 1966, Pub.L.No. 89–554, 80 Stat. 477.

■ There are two separate reasons why the Air Force's withholding action under this piece of legislation was invalid. The first is that, at the time of the withholding order in February 1957 and throughout the period of deductions, neither the Secretary of the Air Force nor any one designated by him made the required determination. Admittedly, the Secretary did not act himself, and it was not until September 1965—long after this case was begun—that he made any delegation at all under the statute. While the withholding was going on, no one but the Secretary could make the requisite determination; the Chief of the Settlements Division, Air Force Finance Center, who actually promulgated the withholding order, had no power to do so. *Post litem motam,* in February 1966 after the Secretary had made his delegation, an attempt was made to have the designee determine that plaintiff had erroneously been paid the dependency allowances, but this belated effort at mending was obviously ineffective to cure the invalidity. Under the clear directive of the statute, the official "determination" of indebtedness, needed in order to recoup from a serviceman's compensation, must precede the withholding; the "curative" "determination" here came several years after the withholding had been completed.

■ The other invalidity in the 1957 withholding order is that, so far as we can tell, it was issued without any exercise of discretion by the Air Force but solely as a mechanical response to the Comptroller General's Certificate of Indebtedness. The letter from the Chief of the Settlements Division to plaintiff's commanding officer recites the General Accounting Office finding and immediately proceeds to request withholding. There is no relevant discussion or other indication that any discretion or independent judgment was being exercised by the Air Force itself.

The Government's answer is that the Air Force's function under 5 U.S.C. § 46d was purely ministerial once the Comptroller General had made his decision, and there was no real discretion whether or not to withhold. We do not agree. The section provides that a *determination* of indebtedness must be made by the Secretary or his designee—and that term ordinarily implies independent judgment. The section also says that the amount of indebtedness *"may"* be collected by withholding—and, again, the word "may" implies choice, judgment, and discretion. In contrast, the different legislation governing withholding from a recipient, as a result of a GAO settlement of the account of a certifying or disbursing officer, (i) compels the service department to follow the GAO's charge against the accountable officer because of the payee's indebtedness, and (ii) provides that compensation "shall" be withheld from the payee until full reimbursement. 5 U.S.C. § 46b (1952).[5]

The legislative history of § 46d aids a bit in its interpretation. For one thing, defendant has pointed to nothing which suggests that Congress used the words "determined" and "may" in a special way departing from their ordinary connotation. For another, the Congress seems to have considered § 46d as applicable prior to the time the GAO formally disallowed an accountable officer's accounts containing the items—the action which would bring § 46b, *supra,* into play—and the inference from the committee reports is that under the new statute the Secretary (or his designee) would not be an automaton but would make his own determination. See S. Rep.No. 937, 83d Cong., 2d Sess. (1954) (letter of. Acting Secretary of the

5. This Section was specifically amended in 1950 to substitute "shall be withheld" for "may be withheld". Compare Act of May 26, 1936, ch. 452, 49 Stat. 1374, with Act of Aug. 3, 1950, ch. 515, 64 Stat. 393.

There was no proof of a relevant settlement of the account of a certifying, disbursing, or accountable officer in this case, and the defendant does not contend that § 46b applies.

Navy); H.R.Rep. No. 1507, 83d Cong., 2d Sess. (1954).

The Defense Department regulation implementing § 46d (Department of Defense Directive No. 7330.2, Nov. 23, 1955) seems to us to carry out this concept that the statute reposes some independent discretion and judgment in the employing agency. The provision on determination of the indebtedness says that "[w]hen it is determined by the designated responsible official on the basis of information obtained through internal audit or an audit of the General Accounting Office or other means that an erroneous payment has been made * * * ", advice shall be given the disbursing officer (para. III. A. 1). This appears to call upon the service to make its own determination "on the basis of" information from the GAO or elsewhere, but not controlled or governed by the GAO's information. This reading is supported by a subsequent provision (para. III. A. 3) stating that if the serviceman questions "the propriety or correctness of a determination of indebtedness" he can ask the Commander of the Air Force Finance Center (in the case of the Air Force) "for review as to whether or not an indebtedness exists and the amount thereof * * *." If the GAO audit or certificate were final, there would be no point to any review by the Air Force.

On collection of the indebtedness, the directive (paras. III. B, C) follows the statute by providing that when an indebtedness is determined it "may" be collected by withholding. If there is to be withholding, the amount to be repaid monthly is decided by a designated officer, and the serviceman can request reconsideration 'on account of hardship. Deductions are to be in reasonable amounts and commensurate with finan-

cial ability to pay so as to prevent hardship. A normal top limit of two-thirds of the pay is established, unless greater deductions are needed to effect reimbursement before separation from active service. These provisions leave the amount of the periodic withholding to the agency's judgment (with certain restrictions).

What we draw from § 46d and the Defense Department regulation is that the Air Force had the discretion not to follow the GAO decision of 1957 if it continued to feel (as the Deputy Director of Finance of the Air Force had previously said) that "a determination * * * that the dependency claimed and paid did not exist" should not be made. It would make no difference that, for the years 1943–1950, the Air Force had no separate legislative authority to decide definitively on officers' dependency problems, while the GAO had its general power to settle and adjust claims and accounts. When it came to *withholding from pay under § 46d* (as distinguished from a suit against the serviceman, or a withholding under § 46b, supra), the statute and the Defense Department directive gave the Air Force its own right to determine whether an indebtedness should be recognized. There is an intimate connection between the service department and the serviceman's compensation, paid by that department, which Congress and Defense seem to acknowledge.

Moreover, the Air Force was required, if it decided on withholding, to use some discretion in setting the amounts, possibly at a very low figure. Neither of these elements of judgment was exercised in 1957, and the Air Force's failure to make the choice for itself necessarily invalidated its withholding order. Cf. Schlesinger v. United States, 390 F.2d 702, 707–709, 182 Ct.Cl. 571, 581–584 (1968) and cases cited.[6]

6. In his interlocutory order on burden of proof, the trial commissioner said that the function of the service secretaries under 5 U.S.C. § 46d in connection with determinations of erroneous payments was a purely mathematical undertaking. Though the court affirmed the commis- sioner's ruling it was not asked to, and did not, adopt the discussion in his order. (The concept of "a purely mathematical undertaking" was not repeated in the commissioner's later order of June 6, 1966, which the court did adopt in toto (without objection by the parties)).

The defendant makes two last-resort arguments with which we must deal. One is that the claim stated in the petition is not for pay earned and improperly withheld but solely for rental and subsistence allowances due plaintiff on account of his dependent parents. The argument is that, under the only cause of action he stated, the plaintiff must prove the dependency, and cannot recover unless the court finds in his favor on that issue. But the short and condensed petition does recite the withholding which began in March 1957, and we construe the pleading as setting forth a claim for pay improperly withheld, as well as an affirmative claim for dependency allowances.

The other of the Government's pleas is that a judgment for plaintiff on account of the invalidity of the 1957 withholding order will be a Pyrrhic victory for the officer since the Air Force can and will begin to withhold again from his retired pay. In fact, says the Government, the belated "determination" made in 1966 by the Secretary's designee, the Commander of the Air Force Accounting and Finance Center, (referred to above) is enough to start a new series of deductions immediately. It is clear that the 1966 paper—made in direct response to this litigation after it was discovered that the Secretary had not delegated his authority under 5 U.S.C. § 46d prior to 1965—was not the result of any independent determination by the Commander of the Air Force Accounting and Finance Center but simply another parroting of the GAO's conclusion in 1957. We judge that the Commander thought that he had no choice but to issue it. It is of no more effect than the 1957 withholding order.

We do not know, of course, whether the Air Force, now apprised that it should make its own determination and use its own discretion, will issue another withholding order after the judgment is entered in this case. That is for the service to decide, but in doing so it should know that the choice is its to make.[7] It can take into consideration the facts (as we are told) that plaintiff's parents are now dead (and therefore cannot support his claim of dependency), that his pertinent records for 1943–1949 are lost or destroyed through no fault of his, and that he is now in a very poor position to make any showing on his own behalf. The Air Force can also consider the time elapsed since the allegedly erroneous payments were made in 1943–1949, and any other factors bearing on the "determination" to be made under 5 U.S.C. § 5514 (Supp. III, 1965–67) (the current equivalent of § 46d) and on the appropriateness of further withholding. The department is not bound by what has gone before.[8]

Plaintiff is entitled to recover the sum of $5,266.10, and judgment is entered to that effect.

7. The plaintiff now receives retired pay. See note 1, supra. The Defense Department Directive, supra, provides that withholding "may" be made from retired pay. The current statutory provision, 5 U.S.C. § 5514 (Supp. III, 1965–67), also says that deductions "may" be made from retired pay.

8. It is unnecessary to decide in this case whether 10 U.S.C. § 2772 (Supp. IV, 1952) (currently 37 U.S.C. § 1007(a) (Supp. III, 1965–67), which expressly provides for a "special order issued in the discretion of the Secretary" before an officer's pay can be withheld (unless the indebtedness is admitted or shown by a court judgment), applies to a withholding from plaintiff's compensation. The Government insists that § 2772 (particularly by its reference to 5 U.S.C. § 82, now 5 U.S.C. § 5512 (Supp. III, 1965–67)) governs only disbursing and accountable officers, not a withholding from an officer who has illegally or erroneously received public funds for his own use. At a previous stage, the trial commissioner expressed the view that 10 U.S.C. § 2772 is inapplicable here and the court accepted that position, at the interlocutory stage, when neither party objected. We do not now regard that preliminary ruling of ours, made at a time when both parties were in accord on the proposition and therefore presented no argument on it, as a precedent for future cases.